IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| VIOLET PEGGY BLAKENEY,<br><br>                    Plaintiff,<br><br>          vs.<br><br>TIM KENWORTHY,<br><br>                    Defendant. | CIV. NO. 20-00219 JMS-KJM<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, ECF NO. 12, AND GRANTING LEAVE TO AMEND |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, ECF NO. 12, AND GRANTING LEAVE TO AMEND**

## I. <u>INTRODUCTION</u>

On May 12, 2020, Plaintiff Violet Peggy Blakeney ("Blakeney" or Plaintiff") filed a Complaint against Defendant Tim Kenworthy ("Defendant"), alleging that Defendant improperly exercised undue influence over his elderly father and committed elder abuse and intentional infliction of emotional distress ("IIED") toward Plaintiff.  ECF No. 1.  Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant moves to dismiss the Complaint for failure to state a claim.  ECF No. 12.  For the reasons discussed below, the Motion is GRANTED in part and DENIED in part, and Plaintiff is GRANTED leave to amend.

## II. __BACKGROUND__

As alleged in the Complaint, in 2013, Plaintiff, then 67 years-old, began a romantic relationship with Defendant's 82-year-old father, Donald.  ECF No. 1 at PageID # 2.  On or about April 28, 2014, Donald purchased a residential property located in Kihei, Maui, Hawaii (the "Maui property").  *Id.* at PageID # 3.  Donald was the sole mortgagor of the Maui property, but he understood that Plaintiff would reimburse Donald for half of the mortgage once she sold her house in California.  *Id.*  Based on that understanding, on or about June 20, 2014, Donald transferred the Maui property to himself and Plaintiff as joint tenants (the "First Deed").[1]  *Id.*  Donald agreed that Plaintiff's daughter could live in the Maui property rent-free in exchange for remodeling the house and paying utilities, until February 2015.  *Id.*  Donald allegedly told Plaintiff that "he had given his children, including Defendant, enough money already, and that . . . '[t]hey should not complain after all [he] gave them.'"  *Id.* at PageID # 4.

On or about November 2, 2014, Donald suffered a heart attack, allegedly leaving him "mentally disabled and in a fragile emotional state," and "lack[ing] the capacity to make important decisions for himself."  *Id.* at PageID # 5.  Donald spent a few days in the hospital and then was discharged into his grandson's care in Citrus Heights, California.  *Id.*  On November 9, 2014, while

---

[1] Plaintiff does not allege that she paid any portion of the mortgage.

Plaintiff was visiting Donald, Defendant arrived and "yelled and screamed profanities and accusations at Plaintiff; took away Donald's phone; . . . forcibly removed Donald from his grandson's house and took Donald to Defendant's own house in the San Francisco Bay area." *Id.* at PageID # 6. On November 19, 2014, Donald signed a quitclaim deed (the "Second Deed"), transferring his joint tenancy in the Maui property with Plaintiff to a tenancy in common.[2] *Id.* Donald died on April 25, 2015. *Id.* at PageID # 7. Plaintiff did not learn of Donald's death until over a year later. *Id.*

On June 8, 2015, Defendant sent a letter to Plaintiff's daughter "accusing [her] of refusing to pay rent . . . [and] making alterations to the [Maui] Property illegally," and "accusing Plaintiff of forcing Donald to sign the First Deed, . . . not paying half of the Mortgage, . . . and threatening eviction of both Plaintiff and her daughter." *Id.* at PageID # 8. By letter dated September 19, 2016, Defendant again accused Plaintiff of pressuring Donald to sign the First Deed and urged Plaintiff to move out of the Maui property and deed her tenant-in-common interest back to Donald's estate. *Id.* at PageID # 9. The Complaint alleges that Plaintiff was "unspeakably offended" by these accusations, that Defendant's letters

---

[2] The difference between joint tenancy and tenancy in common is explained in the Complaint. Under joint tenancy (the First Deed), "Plaintiff would inherit [100% of] the Property if she survived Donald." *Id.* Under tenancy in common (the Second Deed), Donald's 50% share would "be included in Donald's estate upon his death." *Id.* Thus, under the First Deed, Plaintiff would own the entire property if Plaintiff survived Donald, while under the Second Deed Plaintiff would own 50% of the property after Donald died.

"torment[ed]" her, and that if she were to transfer her interest in the Maui property, she would be homeless. *Id.* at PageID ## 9, 11.

On May 12, 2020, Plaintiff filed this Complaint alleging that the Second Deed resulted from Defendant's undue influence over Donald, and that Defendant's letters to Plaintiff and her daughter constituted "elder abuse" and IIED toward Plaintiff. *Id.* at PageID ## 11-15.  On July 13, 2020, Defendant filed the instant Motion to Dismiss.  ECF No. 12.  On July 28, 2020, Plaintiff filed her Opposition, and on September 29, 2020, Defendant filed his Reply.  ECF Nos. 17, 19.  A hearing was held on October 13, 2020.

## III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted."  To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In considering whether a complaint fails to state a claim, the court must set conclusory factual allegations aside, accept non-conclusory factual allegations as true, and determine whether these allegations state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal

4

theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.3d 696, 699 (9th Cir. 1990)).

The court must grant leave to amend if it appears that Plaintiff can correct the defects in her Complaint, *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000), but if a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate. *Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013); *see also Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (reiterating that a district court may deny leave to amend for, among other reasons "repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment") (citation omitted).

## IV.  <u>DISCUSSION</u>

Defendant argues that Plaintiff fails to state plausible claims for IIED,[3] "elder abuse," and undue influence.[4]  The court addresses each in turn.

---

[3] Plaintiff concedes that her IIED claim is time-barred.  *See* ECF No. 17 at PageID # 110. Plaintiff's IIED claim is therefore DISMISSED with prejudice.

[4] Defendant also asks the court take judicial notice of "the ruling and judgment in <u>TIM KENWORTHY, as successor in interest to DONALD KENWORTHY v. OLD REPUBLIC TITLE COMPANY, et al.</u>, Case No. 34-2017-00220055, Superior Court of California, County of Sacramento" (the "*Kenworthy* action"), in which Blakeney was found liable for financial elder abuse, undue influence, fraud, and negligence as to Donald, and a monetary judgment in excess of $496,000 was entered against her.  ECF No. 12 at PageID ## 49-50.

Pursuant to Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record," *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001) (citation and quotation marks omitted), but not of "disputed facts contained in . . . public records," *Khoja v. Orexigen*

(continued . . . )

## A.    Elder Abuse

Hawaii does not recognize a stand-alone civil claim of "elder abuse." *See Ryan v. Salisbury*, 382 F. Supp. 3d 1031, 1055 (D. Haw. 2019); *see also In re Estate of Kam*, 110 Haw. 8, 21, 129 P.3d 511, 524 (2006).  But claims that consumer fraud offenses were committed against elders may support imposition of increased penalties under Hawaii's unfair and deceptive acts and practices ("UDAP") statutory scheme.  *See Ryan*, 382 F. Supp. 3d at 1055 (citing Hawaii Revised Statutes ("HRS") §§ 480-2, -13.5).  In addition, Hawaii's family courts have jurisdiction to issue injunctive relief to address elder abuse issues that arise in the course of pending family court matters.  *See In re Guardianship of Carlsmith*, 113 Haw. 211, 227-28, 151 P.3d 692, 708-09 (2006).  And pursuant to HRS chapter 346, the task of protecting elders generally rests with the Department of Human Services ("DHS").  *See In re Estate of Kam*, 110 Haw. at 21, 129 P.3d at 524 (explaining that HRS chapter 346 "is for the benefit of DHS and does not create a right to proceed for private litigants").

---

*Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (citation omitted).  *See Wyatt v. Terhune*, 315 F.3d 1106, 1114 (9th Cir. 2003), *overruled on other grounds by Albino v. Blaca*, 747 F.3d 1162 (9th Cir. 2014) ("[T]aking judicial notice of findings of fact from another case exceeds the limits of Rule 201.").

Defendant urges the court to disregard Plaintiff's allegations that contradict the factual findings and conclusions set forth in the *Kenworthy* action ruling.  ECF No. 12 at PageID # 50. But this is beyond the scope of judicial notice, and Defendant does not otherwise show how judicial notice would be relevant.  Thus, the court declines to take judicial notice of the ruling and judgment of the *Kenworthy* action.

Plaintiff's "elder abuse" claim is therefore DISMISSED for failure to state a claim. And because Hawaii law neither provides a private cause of action nor recognizes a stand-alone claim for "elder abuse," this claim is DISMISSED with prejudice.

## B.    Undue Influence

Next, Defendant argues that (1) Plaintiff lacks standing to assert her claim that Defendant unduly influenced Donald to execute the Second Deed; (2) Plaintiff failed to allege sufficient facts to state an undue influence claim; and (3) Plaintiff failed to join an indispensable party—Donald's estate.[5]  ECF No. 12 at PageID ## 57-61.  The court addresses each argument in turn.

### 1.    *Standing*

The question of standing in federal courts generally requires considering both constitutional and prudential doctrines.  The constitutional standing doctrine derives from the case and controversy requirement of Article III of the Constitution and requires a plaintiff to show "injury in fact, causation, and redressability."  *Republic of Marshall Islands v. United States*, 865 F.3d 1187, 1199 (9th Cir. 2017) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014)).  To satisfy the injury-in-fact element, a plaintiff "must

---

[5] During the October 13, 2020 hearing, Plaintiff conceded that if her claim proceeds, she would need leave to amend her Complaint to add Donald's estate, the current owner of a 50% interest in the Maui property.

7

demonstrate 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" *Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1153 (9th Cir. 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Plaintiff claims that Defendant's alleged undue influence over Donald, causing him to execute the Second Deed, deprived Plaintiff of her joint tenancy right of survivorship interest in the Maui property. The right of survivorship is an expectancy that does not vest unless and until another joint tenant dies while the joint tenancy remains intact. *See* 48A C.J.S. Joint Tenancy § 3; *In re Brace*, 470 P.3d 15, 33 (Cal. 2020); *Taylor v. Canterbury*, 92 P.3d 961 (Colo. 2004); *Estate of Mitchell*, 91 Cal. Rptr. 2d 192, 201 (Cal. Ct. App. 1999) ("The right of survivorship has been described as a mere expectancy that arises only upon success in the ultimate gamble—survival—and then only if the unity of the estate has not theretofore been destroyed . . . by any . . . action which operates to sever the joint tenancy.") (citations and quotations omitted).

But, although the right of survivorship is an unvested expectancy, it is nevertheless a present legal interest that is created by the conveyance of the property into joint tenancy. *See* 48A C.J.S. Joint Tenancy § 3; *Snyder v. Heidelberger*, 953 N.E.2d 415, 420 (Ill. 2011); *In re Estate of Alpert,* 447 N.E.2d 796 (Ill. 1983) ("The surviving joint tenant does not take the share of the deceased

joint tenant as his successor, but by rights under the conveyance which created the joint tenancy."); *cf. In re Henshaw*, 670 F. App'x 563, 564 (9th Cir. 2016) ("Under Hawaii law, 'a joint tenant has a specific, albeit undivided, interest in the property[.]'") (quoting *Sawada v. Endo*, 57 Haw. 608, 613, 561 P.2d 1291, 1295 (1977)).

Plaintiff argues that if not for Defendant's alleged undue influence over Donald resulting in the Second Deed that extinguished her right of survivorship interest, Plaintiff would be the sole owner of the Maui property rather than the owner of a fifty percent co-tenant interest. Such injury is actual, concrete, and particularized. A ruling in Plaintiff's favor rescinding the Second Deed would entitle her to sole ownership of the Maui property. Thus, the court finds that Plaintiff has established constitutional standing. *See*, *Lazar v. Kroncke*, 862 F.3d 1186, 1198-99 (9th Cir. 2017) (holding that the plaintiff had standing to challenge a law that operated to extinguish an expectancy interest); *see also Matter of Estate of Dobert*, 963 P.2d 327, 330-32 (Ariz. Ct. App. 1998) (similar).

The prudential standing doctrine "embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 289 (2008) (quotation omitted). Prudential standing first requires that a plaintiff assert her own legal interests as the real party in interest and may not assert the legal rights of others. *Id.* at 290; *see also Warth v.*

*Seldin*, 422 U.S. 490, 499 (1975) (explaining that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties"); *Fleck & Assocs., Inc. v. Phoenix*, 471 F.3d 1100, 1103-04 (9th Cir. 2006).  Additionally, Federal Rule of Civil Procedure 17(a) requires that "[a]n action . . . be prosecuted in the name of the real party in interest," except when the plaintiff is: (1) an executor; (2) an administrator; (3) a guardian; (4) a bailee; (5) a trustee of an express trust; (6) a party with whom or in whose name a contract has been made for another's benefit; or (7) a party authorized by statute.  Fed. R. Civ. P. 17(a)(1).

Defendant contends that Donald was the person over whom Defendant allegedly exerted undue influence and therefore, Donald's estate, not Plaintiff, is the real party in interest.  The court disagrees.  First, Donald's estate is not the injured party and its interest is directly opposed to Plaintiff's interest.  That is, absent Defendant's alleged undue influence, Donald's estate would own no interest in the Maui property.  *See, e.g.*, *Dailey v. Dailey*, 65 F.3d 174 (9th Cir. 1995) ("Any property held in joint tenancy with a right of survivorship . . . passes directly to the joint tenant and is never part of the decedent's estate."); *In re Est. of Alpert,* 447 N.E.2d at 381 ("Since the surviving joint tenant succeeds to the interest of his cotenant on the latter's death by virtue of the form of the deed, the property does not become part of the probate estate.") (quoting 4A R. Powell, Real Property

10

par. 619.1 (1982)); *PHH Mortg. Corp. v. Burt*, 112 N.Y.S.3d 231, 234 (N.Y. App. Div. 2019) (explaining that "upon the death of one joint tenant, the property does not pass through the rules of intestate succession, but is automatically inherited by the remaining tenant," and thus, a decedent joint tenant's "interest in the property [does] not pass to his estate.").

Second, the court finds highly persuasive a Washington state case directly on point where a surviving joint tenant was found to be a proper party to an action to set aside a conveyance that destroyed the joint tenancy and that was procured through fraud or undue influence. *See Gottwig v. Blaine*, 795 P.2d 1196, 1198 (Wash. Ct. App. 1990) ("[A] surviving joint tenant possesses a property interest in the whole sufficient to maintain an action to set aside a conveyance obtained from her deceased co-tenant through fraud, undue influence, or lack of capacity.").

In sum, the court finds that Plaintiff has standing to assert her claim for undue influence.

### 2.  *Plaintiff States a Claim for Undue Influence*

The Hawaii Supreme Court has defined "undue influence" as "the improper use of power or trust in a way that deprives a person of free will and substitutes another's objective." *Balogh v. Balogh*, 134 Haw. 29, 54, 332 P.3d 631, 655 (2014) (Pollack, J., concurring in part) (citing *Cvitanovich-Dubie v.*

*Dubie*, 125 Haw. 128, 160, 254 P.3d 439, 471 (2011)).  To state a claim for undue

influence, a plaintiff must allege facts showing "(1) a susceptible party,

(2) another's opportunity to influence the susceptible party, (3) the actual or

attempted imposition of improper influence, and (4) a result showing the effect of

the improper influence."  *Cvitanovich-Dubie*, 125 Haw. at 160, 254 P.3d at 439

(Acoba, J., concurring in part) (citations and internal quotation marks omitted); *see*

*also Balogh*, 134 Haw. at 54, 332 P.3d at 656 ("[T]he critical elements of undue

influence are (1) the abuse of a position of confidence or taking advantage of a

person's weakness, in order to (2) improperly change that person's actions or

decisions.") (Pollack, J., concurring in part) (citing *Cvitanovich-Dubie*, 125 Haw.

at 160-61, 254 P.3d at 471-72) (Acoba, J., concurring in part)).  However, "mere

suspicion that undue influence may have or could have been brought to bear is not

sufficient."  *In re Estate of Mead*, 336 P.3d 362, 366 (Mont. 2014) (quotation

omitted).

Here, Plaintiff alleges that following his heart attack, Donald was

"mentally disabled and in a fragile emotional state," and that his doctors stated that

he "lacked the capacity to make important decisions for himself."  ECF No. 1 at

PageID # 5.  These allegations are sufficient to establish the first element.  And

Plaintiff has satisfied the second element by alleging that Defendant had the

opportunity to influence Donald when he "took Donald to Defendant's own house

in the San Francisco Bay area," thereby isolating Donald from others.  *Id.* at PageID # 6.

Plaintiff alleges that Donald stated his intent to spend the rest of his life with Plaintiff on Maui, that he had given each of his children at least $100,000, that "he wanted to spend the money he had left the way he pleased," and that Donald's children "should not complain after all [he] gave them."  *Id.* at PageID ## 3-5.  Plaintiff further alleges that, after his heart attack, Donald told Plaintiff that he loved her, and he called Plaintiff as soon as he was released from the hospital so that she could visit him at his grandson's house.  *Id.* at PageID # 5.  And Plaintiff alleges that within days of being moved to Defendant's home, isolated from Plaintiff, and still in a weakened mental and physical state, Donald purportedly executed the Second Deed with the help of an attorney.  *Id.* at PageID ## 6-7.

The court finds these facts sufficient to support the plausible inference (based on circumstantial evidence, as alleged) that Defendant exerted improper influence over a weakened and susceptible Donald to execute the Second Deed in contradiction to Donald's stated intent regarding the Maui property.  Thus, Plaintiff has satisfied the third element.  And she has met the fourth element by alleging that Donald did execute the Second Deed, thereby extinguishing her right of survivorship.

In sum, the court finds that Plaintiff has alleged sufficient facts to state a claim for undue influence.

## V. <u>CONCLUSION</u>

Based on the foregoing, Defendant's Motion to Dismiss Complaint, ECF No. 12, is GRANTED in part and DENIED in part.  Plaintiff's claims for "elder abuse" and IIED are DISMISSED with prejudice.  Plaintiff's claim for undue influence may proceed.

During the hearing, Plaintiff conceded that she would need leave to amend her Complaint to name Donald's estate as a defendant.  Because the estate is the current fifty percent owner of the Maui property, it must be joined as a party. *See* Fed. R. Civ. P. 19(a)(1)(B)(i) (requiring joinder of a person or entity that "claims an interest relating to the subject of the action and is so situated that disposing of the action in [its] absence may . . . impair or impede the [entity's] ability to protect the interest").  Thus, the court GRANTS Plaintiff leave to amend

///

///

///

///

her Complaint by **November 9, 2020** for the sole purpose of adding Donald's

estate.  Plaintiff may not amend to add new claims, re-plead the claims dismissed

by this Order, or name any new defendant other than Donald's estate.

> IT IS SO ORDERED.

> DATED:  Honolulu, Hawaii, October 19, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Blakeney v. Kenworthy*, Civ. No. 20-00219 JMS-KJM, Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Plaintiff's Complaint, ECF No. 12, and Granting Leave to Amend